<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :
JOHN LAWBAUGH,                      :
                                    :   Civil Action No. 10-3649 (RMB)
            Petitioner,             :
                                    :
        v.                          :         **O P I N I O N**
                                    :
WARDEN DONNA ZICKEFOOSE,            :
                                    :
            Respondent.             :
_____:


**APPEARANCES:**

        John Lawbaugh, Petitioner <u>pro</u> <u>se</u>
        114 Garfield Street
        Waynesboro, PA 17268

**BUMB**, District Judge

        Petitioner, John Lawbaugh, was confined at the Federal
Correctional Institution ("FCI"), Fort Dix, New Jersey, at the
time he filed this petition for a writ of habeas corpus, pursuant
to 28 U.S.C. § 2241.  For the following reasons, the petition
must be dismissed.

                        <u>BACKGROUND</u>

        Petitioner states that on December 17, 2007, he was
convicted in the United States District Court, District of
Maryland for wire fraud, theft, and income tax evasion charges.
He was sentenced to 33 months incarceration, and three years
supervised release.  (Petition, ¶ 3).  While in custody of the

Bureau of Prisons ("BOP"), Petitioner was found eligible for the BOP's Residential Drug Abuse Treatment Program ("RDAP").  In May of 2009, Petitioner graduated the RDAP and received a one-year sentence reduction and six months of Residential Re-Entry Center ("RRC") placement.  Petitioner was transferred to an RRC in Maryland in May of 2009.  (Pet., ¶¶ 5-7).

Petitioner states that on August 4, 2009, while at the RRC, he was on "furlough" and got into a car accident.  He was arrested at the scene for drunk driving, and was taken to the jail, although Petitioner contends that no sobriety tests were administered.  He was released the next day and was returned to the RRC.  The drunk driving charges were eventually dismissed; however, upon return to the RRC, Petitioner was given an incident report charging "escape."  As a result, Petitioner was transferred back to the Federal Correctional Institution in Maryland.  (Pet., ¶¶ 8-14).

On August 21, 2009, a Disciplinary Hearing Officer ("DHO") found Petitioner guilty of the escape charge.  Petitioner was transferred to FCI-Morgantown and placed in the Special Housing Unit ("SHU").  In October of 2009, the charges against Petitioner were reinvestigated, and on January 28, 2010, the DHO conducted a hearing on the incident report and found Petitioner guilty. Petitioner was sanctioned to 11 days loss of good conduct time, loss of RRC placement, loss of the RDAP one-year sentence

reduction, and transfer to a higher security facility.  (Pet., ¶¶ 15-18).  The January 28, 2010 DHO Report, attached to Petitioner's petition as Exhibit K, reveals that Petitioner had requested a pass to go to his sister's home, and was due back to the RRC by 2:00 p.m. on August 5, 2009.  At 3:30 p.m. on August 5, the RRC Coordinator called Petitioner's pass location and employer and was unable to locate Petitioner.  The evidence used to sanction Petitioner is set forth in that Report.

Petitioner appealed the findings to the Regional Director, pursuant to the BOP's Administrative Remedy Program, which denied his appeal.  Petitioner filed a Central Office appeal, but gives no indication that it was decided prior to the filing of this habeas petition.  (Pet., ¶¶ 20-21).

On April 21, 2010, Petitioner was transferred to FCI Fort Dix.  A team review was conducted, and Petitioner was recommended for 45-60 days RRC placement.  However, on May 19, 2010, the Warden denied the RRC placement.  (Pet., ¶¶ 24-25).  Petitioner's request for informal resolution, requesting RRC placement, was denied on July 8, 2010, on which date Petitioner filed a Request for Administrative Remedy with the Warden.  (Pet., ¶¶ 27-28).

Petitioner filed this habeas petition on July 20, 2010.  On September 7, 2010, Petitioner was released from BOP custody.

## PETITIONER'S CLAIMS

In his petition, Petitioner asks this Court to (1) expunge the incident report, and reinstate his good conduct time, and eligibility for early release programs; (2) consider him for a 12-month RRC pursuant to the "Second Chance Act," 18 U.S.C. § 3624(c)(2)(as amended by the Second Chance Act of 2007, Pub. L. No. 110-199, April 9, 2008); (3) consider him for RRC placement due to his participation in RDAP; (4) consider him for RRC placement because of his participation in the skills development program; and (5) to terminate his term of supervised release, based on the fact that he was not timely considered for early release based on the Second Chance Act, and therefore suffered irreparable harm.

## DISCUSSION

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See

4

Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v.
Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United
States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert.
denied, 399 U.S. 912 (1970).  Nevertheless, a federal district
court can dismiss a habeas corpus petition if it appears from the
face of the petition that the petitioner is not entitled to
relief.  See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers
v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S.
1025 (1989).  See also 28 U.S.C. §§ 2243, 2255.

1.   **Petitioner Has Not Exhausted Administrative Remedies.**

     Petitioner did not fully exhaust his administrative remedies
before filing this habeas petition.

     The BOP Administrative Remedy Program is a three-tier
process that is available to inmates confined in institutions
operated by the BOP for "review of an issue which relates to any
aspect of his/her own confinement."  See  28 C.F.R. § 542.10.  An
inmate must initially attempt to informally resolve the issue
with institutional staff.  See 28 C.F.R. § 542.13(a).  If
informal resolution fails or is waived, an inmate may submit a
BP-9 Request to "the institution staff member designated to
receive such Requests (ordinarily a correctional counsel)" within
20 days of the date on which the basis for the Request occurred,
or within any extension permitted.  See  28 C.F.R. § 542.14.  An
inmate who is dissatisfied with the Warden's response to his BP-9

Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  See id.  Appeal to the General Counsel is the final administrative appeal.  See id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,

exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In this case, Petitioner appealed the August 21, 2009 DHO hearing to the Regional Director, and was denied relief.  He also appealed that denial to the Central Office.  He filed this petition prior to receiving a decision from the Central Office.  Also, Petitioner filed an informal resolution in July of 2010 requesting RRC placement, which was not fully exhausted at the time this petition was filed.  As such, the petition must be dismissed for failure to exhaust.

**2.   Alternatively, Petitioner's Claims are Moot.**

Petitioner was released from federal custody in September of 2010.  Therefore, his claims regarding reinstating his good time credits, RRC placement, and the Second Chance Act, including his

request for a reduction in the term of his supervised release, are moot.

Federal courts are not empowered to decide moot issues. <u>See</u> U.S. Const. art. III, § 2, cl. 1.; <u>Doe v. Delie</u>, 257 F.3d 309, 313 (3d Cir. 2001)(citing <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971)).  To avoid mootness, a controversy must exist at all stages of review.  <u>See</u> <u>id.</u> (citing <u>New Jersey Turnpike Auth. V. Jersey Central Power & Light</u>, 772 F.2d 25, 31 (3d Cir. 1985)). "Mootness has two aspects:  (1) the issues presented are no longer 'live' or (2) the parties lack a cognizable interest in the outcome." <u>Id.</u> (quoting <u>New Jersey Turnpike Auth.</u>, 772 F.2d at 31).

In this case, Petitioner's claims are now moot.  When Petitioner was released, "the Petition became moot because Petitioner was no longer threatened with 'an actual injury traceable to the [BOP] and likely to be redressed by a favorable judicial decision.'" <u>Haqwood v. Grondolsky</u>, 2009 WL 455499 (D.N.J. Feb. 19, 2009)(Hillman, J.)(unpubl.)(finding that Petitioner's placement into home confinement rendered his petition challenging the calculation of time for placement under the "Second Chance Act" moot)(quoting <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998)).  <u>See</u> <u>also</u> <u>Chu v. Schultz</u>, 2009 WL 689675 (D.N.J. Mar. 11, 2009)(Kugler, J.)(unpubl.)(also finding that Petitioner's placement into halfway house rendered Petition

8

challenging calculation of time for placement under "Second Chance Act" moot); Speight v. Quintana, 2008 WL 4646122 (W.D. Pa. Oct. 17, 2008) (unpubl.) (because Petitioner has been released to a halfway house, his challenge under the "Second Chance Act" "is no longer of consequence to him; he no longer has the requisite 'personal stake' in the outcome of the litigation"); Burkey v. Marberry, 556 F.3d 142 (3d Cir. 2009)(holding that federal inmate's challenge to BOP determination that he is not eligible for early release became moot when inmate was released from prison because "[t]he possibility that the sentencing court will use its discretion to modify the length of Burkey's term of supervised release . . . is so speculative that any decision on the merits by the District Court would be merely advisory and not in keeping with Article III's restriction of power"); cf. United States v. Johnson, 529 U.S. 53 (2000)(noting that statute addressing supervised release does not permit court to reduce period of supervised release even where BOP miscalculated term of imprisonment).

In the instant case, because the issues are no longer "live" and because a controversy no longer exists, the issues raised in the instant petition are moot.

**3.   Alternatively, Petitioner's Claims Have No Merit.**

   a.   Disciplinary Proceedings

Petitioner's claim that his incident report should be expunged is without merit.  Petitioner alleges that the disciplinary hearing held by the DHO and the resulting sanctions deprived him of liberty without due process of law.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed.... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time

credits as a sanction,[1] the prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  See Wolff, 418 U.S. at 564-66.  Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings.  See id. at 569-70.

---

[1]     The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b).

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. <u>Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill</u>, 472 U.S. 445, 454-56 (1985).[2]

Here, Petitioner has not alleged any facts that would indicate that the disciplinary hearings and resulting sanctions were contrary in any way to the requirements set forth by the <u>Wolff</u> standard.  With respect to Petitioner's challenges to the sufficiency of the evidence, it is clear that the findings of the Disciplinary Hearing Officer are supported by "some evidence," including the fact that Petitioner received a pass and violated the conditions concerning the pass, as set forth in the DHO Report.  As such, Petitioner was not deprived of due process in connection with the challenged disciplinary proceeding and thus his petition is subject to dismissal.

    b.  <u>RRC Placement Decision</u>

The Second Chance Act does not guarantee a one-year RRC placement, but "only directs the Bureau of Prisons to consider

---

[2]    The due process requirements of <u>Wolff</u>, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10, <u>et</u> <u>seq.</u> <u>See</u>, <u>e.g.</u>, 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

placing an inmate in a RRC for up to the final twelve months of his or her sentence." <u>Lovett v. Hogsten</u>, 2009 WL 5851205 (6th Cir. Dec. 29, 2009) (unpubl.); <u>see also Travers v. Federal Bureau of Prisons</u>, 2009 WL 4508585 (D.N.J. Nov. 30, 2009) (Hillman, J.) (finding that "... nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 120-150 days already approved.  These pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations."); <u>Creager v. Chapman</u>, 2010 WL 1062610 (N.D. Tex. Mar. 22, 2010) (holding that although Petitioner disagrees with her RRC placement date after consideration of the § 3621(b) factors, this "does not establish a constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles [Petitioner] or any other prisoner to any guaranteed placement in a residential reentry center[ ]" and "'the duration of [RRC] placement is a matter to which the [BOP] retains discretionary authority.'" (citations and quotation omitted)); <u>Chaides v. Rios</u>, 2010 WL 935610 (E.D. Cal. Mar. 15, 2010) ("In sum, the BOP has discretionary authority to transfer an inmate to an RRC at any time, after considering the factors set forth in 18 U.S.C. § 3621(b), and has a separate and distinct obligation to consider an inmate for transfer to an RRC for up to twelve months prior to the inmate's release date, after

considering the factors set forth in section 3621(b)." (citation omitted)).

In this case, Petitioner was considered for RRC placement, and, in fact, received an RRC placement of 45-60 days by his team at FCI-Fort Dix, despite the fact that the placement was denied by the Warden.  This Court finds no reason to upset the findings of the Warden, although Petitioner disagreed with the Warden's decision, it is clear that Petitioner was considered, and thus no constitutional violation occurred.

<u>**CONCLUSION**</u>

For the foregoing reasons, the petition for a writ of habeas corpus must be dismissed.  An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge


Dated: February 16, 2011

14